IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ASICS AMERICA CORPORATION, | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | 1:09CV135 |
| | ) | |
| AKEVA L.L.C., | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NIKE, INC.; ADIDAS AMERICA, INC.; NEW BALANCE ATHLETIC SHOE, INC.; and PUMA NORTH AMERICA, INC., | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on (1) Counterclaim Defendants' Renewed Motion for Judgment on the Pleadings [Doc. #195]; (2) the Parties' Joint Rule 26(f) Report [Doc. #227]; and (3) the Parties' Joint Motion for a Status Conference [Doc. #241]. For the reasons that follow, the Court recommends that Counterclaim Defendants' Renewed Motion for Judgment on the Pleadings [Doc. #195] be denied at this time. In addition, the Court has considered the Parties' Joint Rule 26(f) Report and adopts the scheduling order set out below. As such, the Parties' Joint Motion for Status Conference [Doc. #241] is denied as moot.

I. Facts, Claims and Procedural History

This case involves the alleged infringement of certain of Akeva L.L.C.'s patents related to the soles of athletic shoes. In a prior Civil Action in this Court, the Court construed two of Akeva's patents (the '300 patent and the '471 patent) to cover only shoes with rotatable or removable rear soles. See Akeva v. Adidas Am., Inc., No. 1:03CV1207, 2005 WL 6225278 (M.D.N.C. May 17, 2005) (the "Adidas Action"). Thus, shoes with a permanently affixed, non-rotatable sole do not infringe the '300 or '471 patents. The present suit does not assert claims based on the '300 or '471 patents, but instead involves two related families of patents; one family includes the '300 patent, and one family includes the '471 patent.

With respect to the first family (Family 1), the present suit involves alleged infringement of an earlier patent, U.S. Patent 5,560,126 (the '126 patent), as well as 12 patents that are "continuation" patents of the '300 patent involved in the prior suit. In simplified terms, the '126 patent is a grandparent in this line, the '300 patent is a descendant of the '126 patent, and the 12 continuation patents are, in turn, descendants of the '300 patent.

With respect to the second family (Family 2), the present suit involves alleged infringement of 5 patents that are all continuation patents of the '471 patent that was involved in the prior suit. No earlier patents in the line are asserted in this case. Thus, in the

simplified terms, no grandparent is involved in Family 2, and all of the 5 continuation patents at issue with respect to Family 2 are descendants of the '471 patent.

This action was filed by Asics America Corporation against Akeva, seeking a declaratory judgment of non-infringement of certain of these patents as well as a declaratory judgment of invalidity of those same patents. (See Compl. [Doc. #1].) Akeva subsequently counterclaimed for patent infringement against Asics based on the eighteen patents described above (the '126 patent, the 12 continuation patents in the '300 line, and the 5 continuation patents in the '471 line). (Akeva's Am. Answer and Countercl. [Doc. #19].) Akeva also added as parties Defendants Nike, Inc. ("Nike"), Adidas America, Inc. ("Adidas"), New Balance Athletic Shoe, Inc. ("New Balance"), and Puma North America, Inc. ("Puma"). (Akeva's Second Am. Answer and Countercl. [Doc. #22].) Each of the Counterclaim Defendants filed an Answer and counterclaimed against Akeva, seeking a declaration of non-infringement of the Akeva patents and a declaration of invalidity of these patents. (See Docs. ##120, 122, 123, 124, 125.) Asics, Nike, Adidas, New Balance and Puma are referred to collectively as the Counterclaim Defendants.

The Counterclaim Defendants previously moved for dismissal of Akeva's claims on the basis of collateral estoppel. (See [Docs. ## 26, 61, 94, 103, 133].) In those Motions, the Counterclaim Defendants argued that collateral estoppel prevents Akeva from showing that the patents at issue in the present suit cover athletic shoes with permanently affixed and non-rotatable rear soles. The Counterclaim Defendants further argued that because Akeva

3

concedes that none of the accused shoes includes a removable or rotatable real sole, Akeva cannot establish that the accused products infringe on Akeva's patents. (See, e.g., Asics' Mem. in Supp. of Mot. for Partial J. on the Pleadings [Doc. #26] at 3-4.) In support of these contentions, the Counterclaim Defendants noted that in the prior Adidas Action in this Court, the Court determined that the "clear and unequivocal language in the written description" of the '300 Patent includes "an unqualified disclaimer of a permanently positioned rear sole from the subject matter of the invention," and that the '471 Patent's specification "disclaims not only a permanently fixed rear sole, but a permanently attached rear sole." Adidas Action, 2005 WL 6225278, at *10-11. The Federal Circuit affirmed that decision on appeal. See Akeva L.L.C. v. adidas Am., Inc., 208 F. App'x 861 (Fed. Cir. 2006). Indeed, the Federal Circuit noted that "the detachable sole of the '471 [P]atent is not one of several features, it is the primary feature of the invention" id. at 864, and that "one skilled in the art reading the specification of the '300 [P]atent specification would understand the term 'secured' as used in the '300 [P]atent to mean shoes with rear soles that are secured to the shoe, but not permanently fixed," id. at 865.

However, the Parties differ on the legal effect of that determination with respect to the eighteen patents now at issue. As noted above, of the eighteen patents asserted in the present action, one, the '126 patent, is a parent of the '300 patent, and the remainder are descendants of the '300 or the '471 patents. (See Counterclaim Defs.' Mem. in Supp. of Renewed Mot. for J. on the Pleadings [Doc. #196] at 10.) The descendants of the '300

patent and the '471 patent are referred to collectively as the Continuation Patents.[1] Akeva accuses each of the Counterclaim Defendants of infringing at least one Continuation Patent, and also accuses each of the Counterclaim Defendants, except New Balance, of infringing the '126 patent.

This matter previously came before Magistrate Judge P. Trevor Sharp on the earlier-filed motions to dismiss or motions for judgment on the pleadings. After consideration of those motions, Judge Sharp recommended dismissal of Akeva's claims for infringement of the Continuation Patents. In reaching this conclusion, Judge Sharp first noted that the Adidas Action resulted in a determination that the '300 and '471 patents may not be infringed by shoes with a permanently attached and fixed rear sole. In addition, Judge Sharp noted the Federal Circuit's teaching in Hakim v. Cannon Avent Grp., PLC, 479 F.3d 1313 (Fed. Cir. 2007), "that absent some action by Akeva to successfully rescind those earlier disclaimers, the disclaimers are applicable as a matter of law to the continuation patents at issue in this action" (11/16/10 Order [Doc. #143] at 9). Finally, Judge Sharp relied on the fact that Akeva had not alleged or argued "that it rescinded the disclaimers found by the Adidas court for the '300 and '471 patents." (Id. at 8.) Based on this analysis, Judge Sharp concluded that Akeva was foreclosed from now maintaining claims based on the Continuation Patents against shoes with permanently attached and fixed rear soles. (Id. at 8-

---

[1] The Continuation Patents consist of U.S. Patent Nos. 6,966,130; 6,968,635; 6,996,924; 7,069,671; 7,082,700; 7,089,689; 7,114,269; 7,155,843; 7,380,350; 7,536,809; 7,540,099; 7,043,857; 7,040,041; 6,966,129; 6,996,923; 7,040,040; and 7,127,835.

5

9.) However, Judge Sharp determined that the '126 patent, as the sole patent at issue which is not a Continuation Patent, required separate examination. In that regard, Judge Sharp rejected the Counterclaim Defendants' contention that the Adidas Court's construction of certain claim terms in the '300 patent must apply equally to its parent, the '126 patent. Rather, noting that context matters when construing terms, Judge Sharp declined to foreclose Akeva's ability to present evidence opposing an identical construction of the relevant terms as used in the '126 and '300 patents. (Id. at 10.)

Akeva moved for reconsideration of Judge's Sharp's Recommendation. [Doc. #150.] In its brief in support of that Motion, Akeva argued that Judge Sharp's ruling was based "upon the mistaken assumption that Akeva had failed to rescind or revoke the disclaimers in its parent patents." (Akeva's Mem. in Supp. of Mot. for Recons. [Doc. #151] at 2.) Akeva also requested leave to file a Third Amended Answer and Counterclaim. Akeva offered that "[t]he purpose of this amendment would be to specifically allege the facts that were found missing by the Magistrate Judge; *i.e.*, that during the prosecution of the Continuation Patents, Akeva rescinded the disclaimers addressed in the Recommendation." (Id. at 2.) The Counterclaim Defendants opposed the proposed amendment, contending that as a matter of law, Akeva could not rescind disclaimers that would result in broadening the scope of the continuation patents. Judge Sharp nevertheless allowed Akeva to file its Third Amended Counterclaim, and as a result withdrew the Recommendation. (7/21/11 Order [Doc. #175] at 2.) Judge Sharp noted that the Recommendation "addressed [Akeva's] Second Amended

6

Counterclaim, a pleading that is no longer Akeva's controlling statement of counterclaim" given the allowance of the filing of the Third Amended Counterclaim. (Id. at 2.) Counterclaim Defendants have now filed a Renewed Motion for Judgment on the Pleadings [Doc. #195], arguing that "none of Akeva's additional allegations alter the result" of Judge Sharp's Recommendation. (Countercl. Defs.' Mem. in Supp. of Renewed Mot. for J. on the Pleadings [Doc. #196] at 8.) The Court held a hearing on the Renewed Motion and allowed the parties to present Supplemental Briefing. For the reasons set out below, the Court follows Judge Sharp's prior conclusion as to the '126 patent. With respect to the Continuation Patents, the Court concludes that collateral estoppel controls the determination of the scope of the '300 and '471 patents, but that additional issues must be resolved as to the Continuation Patents that are beyond the scope of the present Motion for Judgment on the Pleadings. Therefore, the Court will recommend that the Motion for Judgment on the Pleadings be denied.

II.     Discussion

The standard for granting judgment on the pleadings is the same as for granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). A plaintiff fails to state a claim upon which relief may be granted under Rule 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

7

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

With respect to the Counterclaim Defendants assertions of collateral estoppel, collateral estoppel is applicable when: "(1) the 'identical issue' (2) was actually litigated (3) and was 'critical and necessary' to a (4) 'final and valid' judgment (5) resulting from a prior proceeding in which the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue." McHan v. Commissioner, 558 F.3d 326, 331 (4th Cir. 2009). The burden is on the moving parties to establish these elements. See Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982) ("The burden is on the party asserting collateral estoppel to establish its predicates.").

As previously noted by Judge Sharp, each of the seventeen Continuation Patents is a continuation of either the '300 or '471 patents. "A continuation application claims the same invention claimed in an earlier application" and the application constitutes "one continuous application *for the continuing subject matter recited therein*." Transco Prods. v. Performance Contracting, 38 F.3d 551, 555 (Fed. Cir. 1994) (emphasis in original) (quotation omitted); see also 37 C.F.R. § 1.53(d) (noting that a continuation application under this section must be filed before the termination of proceedings on "the prior application," and the continuation application must disclose and claim "only subject matter disclosed" in "the prior application"). In addition, each of the Continuation Patents includes language incorporating either the '300 or '471 patent, as applicable, by reference, and where prior patents are

incorporated by reference, "[t]he incorporated patents are 'effectively part of the host [patents] as if [they] were explicitly contained therein.' . . . As a result, the disclaimers of the incorporated patents are part of the asserted patents." X2Y Attenuators, LLC v. International Trade Comm'n, 757 F.3d 1358, 1362-63 (Fed. Cir. 2014) (quoting Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1329 (Fed. Cir. 2001)) (alterations provided by X2Y Attenuators) (some internal citations omitted); see also Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd., 23 F. Supp. 3d 50, 63 (D. Mass. May 20, 2014) ("Because the inventor limited the scope of the term for a parent application from which the patent-at-issue is a continuation, the limitation applies with equal force to the [continuation] patent.").

However, as recognized by Judge Sharp, "a disclaimer made during prosecution can be rescinded, permitting recapture of the disclaimed scope." Hakim, 479 F.3d at 1318; see also X2Y Attenuators, 757 F.3d at 1363 (noting that "incorporation by reference does not convert the invention of the incorporated patent into the invention of the host patent," and "it is certainly possible that a clear and unmistakable disavowal in an incorporated patent is no longer so when placed in the context of the disclosure of the host patent" (internal quotations omitted)).[2] In this case, Akeva now alleges in the Third Amended Counterclaim that it rescinded any disclaimer or limitation in scope and effectively broadened the scope of the Continuation Patents beyond that set out in the '300 and '471 patents. Counterclaim Defendants contend that a broadening of scope would mean that the Continuation Patents

---

[2] Analysis of these issues thus involves overlapping doctrines regarding the scope of a continuation patent and the effect of incorporation by reference of earlier patent disclosures.

9

involved "new matter" that could not claim the benefit of the earlier filing date and would face potential invalidity under 35 U.S.C. § 102 and § 103. Cf. Moy's Walker on Patents § 3:58 (noting that "by omitting parts of the parent application from the continuation, the inventor is taken as having allowed the aspects of the patenting transaction associated with the omitted parts to have ended. One consequence of this rule is that the presence of the omitted subject matter in the parent application cannot be relied upon to support the adequate disclosure of any claims presented in the continuation. Any attempts by the applicant to reintroduce the canceled subject matter back into the disclosure of the continuation are judged under the prohibition against new matter."); Anascape, Ltd. v. Nintendo of Am. Inc., 601 F.3d 1333, 1338-39 (holding that removing limitations in the description of a continuation patent resulted in inclusion of "new matter" not entitled to the priority date of the prior application); Hakim, 479 F.3d at 1317 (noting that if a patent applicant attempts to include broader claims in a continuation patent, "entitlement to an earlier filing date for any claimed subject matter may of course be necessary to avoid a statutory bar created by intervening events outlined in 35 U.S.C. §§ 102 and 103"); Hollmer v. Harari, 681 F.3d 1351, 1355-58 (Fed. Cir. 2012) ("Thus, if any application in the priority chain fails to make the requisite disclosure of subject matter, the later-filed application is not entitled to the benefit of the filing date of applications preceding the break in the priority chain."); Zenon Envtl., Inc. v. U.S. Filter Corp., 506 F.3d 1370, 1379 (Fed. Cir. 2007) (noting that to claim the benefit of an earlier ancestor, "continuity of disclosure must have been

maintained throughout a chain of patents"); Lockwood v. American Airlines, Inc., 107 F.3d 1565, 1572 (Fed. Cir. 1997) (holding that "[e]ach application in the chain must describe the claimed features" and that if "one of the intervening applications does not describe" the subject matter, the later application cannot claim the benefit of the earlier application). However, analysis of these issues would require consideration of whether the prior disclaimers were in fact rescinded, which parts of the Continuation Patents constitute "new matter," the effective priority date to the extent new matter is included, and the potential invalidity of the Continuation Patents under 35 U.S.C. § 102 and § 103. Consideration of these issues is not a matter of collateral estoppel, as these issues go beyond the determination of the scope of the '300 and '471 patents in the prior suit. Moreover, resolution of these issues goes beyond a Motion for Judgment on the Pleadings. As such, it appears that these issues are more appropriately resolved on the full record, either as part of the claim construction proceedings or on a separate motion for summary judgment directed to these issues as to the Continuation Patents.[3]

With respect to the '126 patent, the Court is in agreement with Judge Sharp's prior conclusion that the '126 patent requires separate analysis from the Continuation Patents. The '126 patent is not a continuation of either the '300 patent or the '471 patent, but rather a

---

[3] This result is consistent with Judge Sharp's granting of leave to Akeva to file its Third Amended Counterclaim, which implicitly rejected the Counterclaim Defendants' contention that Akeva is barred as a matter of law from attempting to show a rescission of a prior disclaimer of scope. If rescinding its disclaimers is possible, the Court must consider whether Akeva successfully did so, and must then consider the implications based on the potential "new matter." These questions involve material not properly before the Court on a motion made pursuant to Federal Rule of Civil Procedure 12(c).

parent of the '300 patent. Despite this, Counterclaim Defendants contend that collateral estoppel should nonetheless apply because the Adidas Action's construction of the term "secured" in the '300 patent should apply to its parent, the '126 patent, as well because "construction of this term should be consistent across both patents." (Countercl. Defs.' Mem. in Supp. of Renewed Mot. for J. on the Pleadings [Doc. #196] at 26). However, that contention is more appropriately reserved for consideration at a claim construction hearing. The Counterclaim Defendants also contend that "incorporation of the '126 patent into the '300 patent by reference prevents Akeva from asserting the '126 patent against shoes with non-rotatable heels" (id. at 27). However, Counterclaim Defendants do not cite authority for the proposition that a parent patent may not be broader than its continuation. Counterclaim Defendants' position may prove to be the correct one in that there may ultimately be no basis for a different construction of the terms of the '126 patent than has been determined for the '300 patent, but resolution of these arguments at the pleading stage would be premature.

In light of these determinations, the Court will recommend that the Motion for Judgment on the Pleadings be denied. However, the Court notes that it may be appropriate to allow the parties to present summary judgment briefing to address these issues in coordination with claim construction, particularly as to the Continuation Patents. In addition, it would also be appropriate for the Parties' claim construction briefs to separately

address the '126 patent, so that the District Judge can consider how and when to set these matters for further determination.

   III.   Discovery Scheduling

In light of this determination, the Court adopts the discovery plan set out in the Parties' Joint Rule 26(f) Report. The Court notes that in the Report, the parties disagree as to 2 issues related to discovery scheduling: (1) whether Akeva should be required to limit the claims asserted in this case prior to providing preliminary infringement considerations; and (2) whether to allow preliminary summary judgment briefing prior to the close of discovery. As to the first area of disagreement, the Court will adopt Akeva's position, as previously adopted by Judge Sharp, and will require Akeva to limit its claims after the Counterclaim Defendants have provided their Preliminary Non-Infringement and Invalidity Contentions. In addition, consistent with the Court's conclusions above, the Parties' claim construction briefing should include separate sections on the '126 patent, so that the Court can consider whether to address that patent separately.

As to the second area of disagreement, and consistent with the Court's conclusion above, the Court finds that preliminary summary judgment briefing may be appropriate in this case, particularly in light of the issues raised as to the Continuation Patents. Therefore, the Court will adopt the Counterclaim Defendants' position to allow for the possibility of preliminary summary judgment briefing. The Counterclaim Defendants will be directed to submit a proposal in this regard at the time of claim construction briefing.

Having reached these conclusions, the Court adopts the schedule set out below.

| EVENT | DEADLINE |
|---|---|
| Initial Disclosures under Rule 26(a)(1)(C), to the extent not already provided | April 10, 2015 |
| Deadline for Completion of Preliminary Discovery | April 30, 2015 |
| Akeva's Preliminary Infringement Contentions and accompanying documents (Local Rule 103.1 and 103.2) | June 15, 2015 |
| Defendants' Preliminary Non-infringement and Invalidity Contentions (Local Rule 103.3 and 103.4) | July 30, 2015 |
| Akeva identifies 30 asserted claims | August 10, 2015 |
| Exchange of claim terms requiring construction (Local Rule 104.1) | August 24, 2015 |
| Exchange of preliminary proposed claim constructions and extrinsic evidence (Local Rule 104.2) | September 14, 2015 |
| Joint claim construction statement due (Local Rule 104.3) | October 5, 2015 |
| Claim construction discovery closes (LR 104.4) | November 4, 2015 |
| Defendants' proposal for Preliminary Summary Judgment Briefing due | November 9, 2015 |
| Markman motions and opening claim construction briefs due (LR 104.5(a)) | November 19, 2015 |
| Responsive claim construction briefs due (LR 104.5(b)) | December 10, 2015 |

To the extent that the Joint Report also included disagreements as to trial scheduling and the possibility of a bench trial as to certain defenses, the Court will not resolve those

matters at this time; instead, those are matters for the trial judge to consider after any claim construction and preliminary summary judgment determinations.

IV. Conclusion

IT IS RECOMMENDED that Counterclaim Defendants' Renewed Motion for Judgment on the Pleadings [Doc. #195] be denied.

IT IS ORDERED that the Court adopts the Parties' Joint Rule 26(f) Report [Doc. #227] to the extent set out above. As a result, the Parties' Motion for Status Conference [Doc. #241] is DENIED AS MOOT, without prejudice to the Parties filing a further request for a Status Conference if additional matters remain for resolution by the Court.

This, the 9th day of March, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge